REL: February 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

————————————————

## CL-2022-0702

————————————————

### J.C.

### v.

### K.E.

### Appeal from Blount Juvenile Court
### (CS-19-5)

MOORE, Judge.

J.C. ("the father") appeals from a judgment entered by the Blount Juvenile Court ("the juvenile court") that, among other things, awarded sole physical custody of K.C. ("the child") to K.E. ("the mother"). Because the juvenile court erred in failing to hold a hearing on the father's

postjudgment motion, we reverse the denial of the postjudgment motion and remand the case to the juvenile court with instructions.

Pertinent Procedural History

The child was born on May 1, 2018. On June 5, 2019, the father filed a complaint in the Jefferson Juvenile Court, requesting that he be adjudicated the legal father of the child and awarded visitation with the child. The Jefferson Juvenile Court transferred the case to the juvenile court on June 28, 2019. On January 8, 2020, the father filed an amended complaint to add a claim for custody of the child. On that same date, the mother filed an answer to the amended complaint, along with a counterclaim for custody of the child and child support. The case proceeded to trial on April 27, 2022.

At the outset of the trial, the juvenile court directed the father to call his first witness. The following colloquy then occurred:

> "[Counsel for the father]: ... Before we start, we would like to put on the record that we were told today that we were limited to two [and] a half hours when I had previously told the court that it will take two days to try [the case]. We have a host of exhibits that it will be extremely prejudicial to our case not to be allowed to get into those in detail. This is a significant case. [The father] has filed a medical complaint for custody he had filed for visitation.

2

"[The juvenile court]:  Sure.

"[Counsel for the father]: There's just no way for us to do our whole case adequately in two and a half hours.

"[The juvenile court]:  Well, it will be a total five, each side has two and a half. The court only has just today, tomorrow I have a whole other docket, so with that being said, sir, if you'll raise your right hand for me."

During the direct testimony of the father, the juvenile court indicated that the father had exhausted his allotted two and one-half hours and instructed his counsel to ask one final question.  Later, when the father's counsel attempted to cross-examine the mother's first witness, the juvenile court stated:  "I realize that you used all of your time, I am going to bend my rule and I'm going to give you 10 minutes if you need 10 minutes with this lady."  The juvenile court then enforced a 10-minute time limit for the father's cross-examination of the remaining witnesses for the mother, including the mother herself.

On May 3, 2022, the juvenile court entered a final judgment that, among other things, awarded the mother sole physical custody of the child, subject to an award of "standard" biweekly, summertime, and holiday visitation to the father.  On May 17, 2022, the father timely filed

a postjudgment motion, asserting, among other things, that he had been denied due process of law under the 14th Amendment by being constrained by the time limits established by the juvenile court, which, according to the father, prevented him from completing his testimony, from calling any other witnesses on his behalf, and from effectively cross-examining the mother and her witnesses. The father included in his postjudgment motion a recitation of the evidence that he would have presented if he had been given more time, which recitation includes several affidavits of witnesses whose testimony was not heard at trial and consumes approximately 200 pages of the record. The father also attached over 1,000 pages of exhibits to the postjudgment motion. The father requested a hearing on the postjudgment motion in order to present oral argument for why the motion should be granted, but the juvenile court did not set the postjudgment motion for a hearing.

On May 28, 2022, while the postjudgment motion was still pending, the father filed a notice of appeal. Pursuant to Rule 4(a)(5), Ala. R. App. P., the father's notice of appeal was held in abeyance pending the juvenile court's timely disposition of the postjudgment motion, or the denial by

CL-2022-0702

operation of law of said motion.  See Rule 1(B), Ala. R. Juv. P. (providing that, in juvenile courts, postjudgment motions must be ruled upon within 14 days or they are deemed denied by operation of law).  The juvenile court did not rule on the father's postjudgment motion within the 14-day period set forth in Rule 1(B), so it was denied by operation of law on June 6, 2022, at which point, the notice of appeal became effective.  See Rule 4(a)(5).

## Issue

The father presents several arguments on appeal, but we find the argument that the juvenile court erred in failing to conduct a hearing on his postjudgment motion to be dispositive.

## Analysis

In his postjudgment motion, the father argued that he had been denied due process when the juvenile court imposed "surprise" time limits on the parties during the trial, which, he argued, unreasonably prejudiced his ability to adequately present his case and cross-examine the mother and her witnesses. The father requested, among other things, that the juvenile court conduct a new trial in order to cure the alleged

5

lack of due process by allowing him to present all the evidence to support his claims and to challenge the mother's claims, without a time limit. At the conclusion of his postjudgment motion, the father requested that the juvenile court hear oral argument on the motion. In Ex parte Evans, 875 So. 2d 297, 299-300 (Ala. 2003), our supreme court held that, "if a party requests a hearing on its motions for a new trial, the court must grant the request." The supreme court also stated, however, that, "'[a]lthough it is error for the trial court not to grant such a hearing, th[at] error is not necessarily reversible error,'" if, for example "'an appellate court determines that there was no probable merit to the motion.'" 875 So. 2d at 300 (quoting Flagstar Enters., Inc. v. Foster, 779 So. 2d 1220, 1221 (Ala. 2000)). In that instance, the appellate court "'may affirm [the trial court's denial of the hearing] based on the harmless-error rule. See Rule 45, Ala. R. App. P.'" Id. (quoting Foster, 779 So. 2d at 1221).

In this case, we cannot say that the father's postjudgment motion lacks probable merit. In R.C. v. L.C., 923 So. 2d 1109 (Ala. Civ. App. 2005), this court reversed a judgment determining the dependency and custody of two children on the basis that the Houston Juvenile Court had

6

denied the children's mother, R.C., due process by unduly limiting her presentation of the evidence. The Houston Juvenile Court set a hearing for August 17, 2004, to consider a dependency petition filed by L.C. and K.C., the children's paternal grandparents. The paternal grandfather testified that afternoon, and the hearing was recessed until August 30, 2004. On that date, the paternal grandfather completed his testimony and the paternal grandparents called four other witnesses before resting their case. R.C. then began presenting her case by calling the paternal grandmother as her first witness. After an examination spanning only 20 pages of trial transcript, the trial judge informed the parties that it was 2:40 p.m. and that he would be concluding the trial at "about 3:15." 923 So. 2d at 1110. Counsel for R.C. objected to the time limit, and, upon completing the examination of the paternal grandmother, called R.C. as a witness; R.C.'s testimony was completed within the allotted time. Counsel for R.C. indicated that more witnesses would be called, but the trial judge indicated that he was "out of time" and had "heard enough testimony to make a decision." Id. at 1111.

7

This court first determined that R.C. had preserved her argument that the trial judge had violated her due-process rights by enforcing the time limit. Ordinarily, when a trial court excludes evidence, the proponent of that evidence must make an offer of proof to preserve the objection for appellate review, but no offer of proof is necessary when it would be a useless gesture based on the attitude of the trial court. Harbert v. Harbert, 721 So. 2d 224, 225 (Ala. Civ. App. 1998). This court determined in R.C. that, because the Houston Juvenile Court had insisted that no more time would be allowed for the trial of the case, any attempt by R.C. to make an offer of proof would have been futile. R.C. did, however, attach to her postjudgment motion affidavits from the witnesses that she had intended to call, which affidavits contradicted the testimony of the paternal grandparents on key issues in the case. We determined that those affidavits were sufficient for this court to determine whether R.C. had been denied due process by the decision of the trial judge to limit her presentation of her case.

This court next determined that R.C. was entitled to due process in the dependency and custody proceeding, which, we stated, included a fair

8

opportunity to present evidence and argument, as well as a reasonable opportunity to controvert the paternal grandparents' claims. 923 So. 2d at 1111-12 (citing Crews v. Houston Cnty. Dep't of Pensions & Sec., 358 So. 2d 451, 455 (Ala. Civ. App. 1978)). This court noted that Rule 403, Ala. R. Evid., gives a trial court some discretion in excluding cumulative evidence, but we held that a "'trial court is not empowered to exclude evidence simply because of impatience with the length of the trial.'" 923 So. 2d at 1112 (quoting Charles W. Gamble, McElroy's Alabama Evidence § 21.01(10) (5th ed. 1996)). This court also concluded that a "'"trial court may not simply disallow testimony due to time constraints and the desire to clear its docket."'" 923 So. 2d at 1114 (quoting Harbert, 721 So. 2d at 225, quoting in turn Morrison v. Morrison, 628 So. 2d 839, 841 (Ala. Civ. App. 1993)).

The paternal grandparents in R.C., citing Case v. Case, 627 So. 2d 980 (Ala. Civ. App. 1983), and Morrison, argued that the decision of the Houston Juvenile Court to limit the presentation of R.C.'s evidence should be upheld because the court had heard the evidence and had denied R.C.'s motion for a new trial. In response to that argument, this

court rejected the principle that the decision of a trial court to limit the presentation of the evidence is automatically harmless error when the trial court later denies a motion for a new trial. This court explained that, in Case, this court had affirmed a judgment entered by the Houston Circuit Court because the record in that case had disclosed that the evidence was becoming cumulative and repetitive and was related to facts already established or uncontroverted and, thus, it had been within the discretion of the Houston Circuit Court to preclude further evidence on the same point. This court in R.C. then overruled Morrison to the extent that it had determined that the decision to arbitrarily end a trial after receiving only the testimony of the parties is harmless error if the trial court has reviewed the substance of the testimony of the excluded witnesses and has determined that the outcome of the trial would not have changed. This court held that the right to due process requires a trial court to receive non-cumulative evidence on material points. 923 So. 2d at 1113.

In the end, this court in R.C. concluded that the Houston Juvenile Court had unfairly limited R.C. from presenting her case. This court

10

noted that R.C. had been informed of the time limit only 35 minutes before it was to expire and only after the paternal grandparents had been allowed to present their case in full. This court determined that the Houston Juvenile Court had acted in a wholly arbitrary fashion in imposing the deadline, in violation of R.C.'s due-process rights to notice and an opportunity to be heard in a meaningful manner. 923 So. 2d at 1114.

The father argues that he was similarly denied due process in this case based on the unexpected and arbitrary decision of the juvenile court to unduly limit the presentation of his evidence and to stifle his opportunity to controvert the claims of the mother through a thorough and sifting cross-examination. The father analogizes his case to R.C. because, he says, he was not adequately warned of the time limit, the time limits unfairly prevented him from completing his testimony and from calling other favorable witnesses who would have offered non-cumulative evidence, the time limits were arbitrary and imposed improperly by the juvenile court to clear its docket, and it would have been futile for the father to make an offer of proof because of the juvenile

11

court's insistence on enforcing the time limits. The circumstances of this case are not exactly on all fours with those in <u>R.C.</u>, but the minor differences emphasized by the mother in her brief to this court do not persuade us that the father's postjudgment motion should have been denied by operation of law. We do not express any opinion on whether the postjudgment motion is due to be granted; we hold only that it was not harmless error for the juvenile court to deny the postjudgment motion without first conducting a hearing on its merits.

We therefore reverse the denial of the postjudgment motion by operation of law and remand the case with instructions that the juvenile court forthwith hold a hearing on the father's postjudgment motion and take such other actions as are consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Edwards, Hanson, and Fridy, JJ., concur.